**Shari L. Lane, OSB #022440**
shari.lane@harrang.com
**Joshua P. Stump, OSB #974075**
joshua.stump@harrang.com
HARRANG LONG GARY RUDNICK P.C.
1001 SW Fifth Avenue, 16th Floor
Portland, OR 97204
Telephone:    503.242.0000
Facsimile:    503.241.1458
Of Attorneys for Plaintiff DAVID SHANE DORAN

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **DAVID SHANE DORAN,** | Case No. 13-1429 |
| Plaintiff, | COMPLAINT |
| | DISABILITY DISCRIMINATION |
| vs. | (42 U.S.C. § 12101 ET SEQ; |
| | O.R.S. 659A.103 ET SEQ) |
| **WAL-MART STORES, INC.,** | |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff David Shane Doran appears and alleges as follows:

### PARTIES AND JURISDICTION

1.    At all relevant times, Plaintiff David Shane Doran ("Mr. Doran") had his permanent residence in Jackson County, in the State of Oregon.

2.    At all relevant times, Defendant Wal-Mart Stores, Inc. ("Wal-Mart") was a foreign corporation doing business in the State of Oregon, with corporate headquarters located at 702 SW 8th Street, Bentonville, Arkansas, 72716.

Page 1 – **COMPLAINT**

3.      At all relevant times, Mr. Doran was employed by Wal-Mart as a pharmacist, at various locations in the State of Oregon.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Mr. Doran brings claims arising under the Constitution, laws, or treaties of the United States, including the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq*., and pursuant to 28 U.S.C. §1332, as there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Jurisdiction over these claims is specifically granted to the District of Oregon pursuant to 42 U.S.C. § 2000e-5(f)(1) and § 12117(a).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, inasmuch as the state law claims arise out of the same facts as the claims arising under federal law, such that the state law claims form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue with the District of Oregon is proper, as Mr. Doran was at all material times a resident of Oregon, employed in Wal-Mart stores within the jurisdiction of the Medford Division of the District of Oregon. Wal-Mart resided in the Medford Division of the District of Oregon for venue purposes, including but not limited to employing citizens of Oregon within the jurisdiction of the Medford Division of the District of Oregon.

## FACTUAL BACKGROUND

6.      Mr. Doran received his Bachelor of Science in Pharmacy from Oregon State University in 1979.  Mr. Doran was subsequently licensed to practice pharmacy in Oregon in 1980.

7.      In 2007, Mr. Doran was diagnosed with the disabling medical condition, addiction.  Addiction is recognized as a serious health condition by the medical profession

Page 2 – **COMPLAINT**

(Substance Abuse Disorder), and is a recognized disability under federal and state laws, pursuant to 42 U.S.C. § 12114(b), § 12210(b), and O.R.S. 659a.124(2).  Addiction is a permanent condition that, when not in remission or recovery, substantially limits an individual's ability to work, care for himself, socialize, learn, and many other major life activities; as with other chronic medical conditions, treatment may keep the condition in remission, but there is no permanent cure.

8.       In January 2007, Mr. Doran was employed with a pharmacy unrelated to Defendant Wal-Mart.  His employment with that pharmacy was terminated due to conduct related to addiction.  Mr. Doran voluntarily stopped practicing pharmacy, reported his conduct to the Oregon Board of Pharmacy, and entered into a thirty-day in-house treatment program.

9.       On June 12, 2007, Mr. Doran entered into a Consent Decree with the Oregon Board of Pharmacy.  Under the Consent Decree, Mr. Doran was granted a probationary license to practice pharmacy.  The probationary license required Mr. Doran to enter a five-year program of recovery contract through the Pharmacists Recovery Network ("PRN").  The PRN treatment plan included the following:  full disclosure to any prospective employer, during the initial application process; weekly group and individual counseling; weekly and random drug tests; restricted hours of work and supervision of work; strict oversight of the individual's progress by a PRN member; and cooperation by the employer with the PRN treatment plan.  At all relevant times, the PRN treatment program was overseen or administered by the Oregon Board of Pharmacy.

10.      On or about June 19, 2007, Mr. Doran was hired by Wal-Mart to work in its Medford store pharmacy.

Page 3 – **COMPLAINT**

11.     At the time of hire, Mr. Doran disclosed to Wal-Mart his history of addiction, the details of his prior addiction-related conduct, the Board of Pharmacy probation, and the terms of his PRN treatment plan.  Wal-Mart agreed to cooperate with PRN, as Mr. Doran's employer, regarding the drug tests, restricted hours and supervision, and counseling.

12.     The PRN treatment plan also required Mr. Doran to obtain a signed acknowledgment, annually, from his Wal-Mart supervisors, confirming that he remained in compliance with his PRN treatment plan, including passing all drug tests, and required Mr. Doran to submit that signed acknowledgment to the Board of Pharmacy.

13.     At all relevant times, Mr. Doran remained in compliance with his PRN treatment plan. Every year, Mr. Doran submitted a signed acknowledgment from his Wal-Mart supervisors to the Board of Pharmacy, certifying that he remained in compliance.

14.     Mr. Doran successfully graduated from the PRN treatment program early in 2010, prior to the planned graduation date, in part because Mr. Doran had become an advocate for and participant in the PRN program in Southern Oregon.

15.     At no time during his employment with Wal-Mart did Mr. Doran arrive to work impaired or become impaired on the job, fail a drug test, or in any other way fail to perform the essential functions of his job in a satisfactory manner.

16.     During the entirety of his employment with Wal-Mart, Mr. Doran received no discipline of any kind, received regular raises, and was entrusted with management responsibilities.

17.     Mr. Doran's performance evaluations consistently rated him as a "Solid Performer" or "Exceeds Expectations," throughout his employment with Wal-Mart.  Mr. Doran's

performance evaluation for 2010 rated him "Exceeds Expectations" in seven categories, and

"Role Model" (the highest rating) in two categories, and included such comments as the

following: "Shane is an excellent pharmacist with a great understanding of both business and

patient care. He is instrumental in our daily operations and shines everyday"; "Shane has a great

deal of knowledge and has a very positive impact on our patients. He contributes daily to

improve our patient care . . . it is a joy to have him as a pharmacist."  On September 14, 2011,

Mr. Doran's supervisor again rated him as "Exceeds Expectations" in almost all categories, and

commented: "Shane is a great pharmacist with a wealth of knowledge.  He has a great attitude.

He really takes care of his patients and fully supports [the other managers]."

      18.     On October 19, 2011, about one month after referring to Mr. Doran as "a great

pharmacist with a wealth of knowledge," Wal-Mart terminated Mr. Doran's employment, citing

"inability to perform job." Mr. Doran was told the termination was "because of [his] past

history."

      19.     Wal-Mart's stated reason for termination is a pretext for the actual reason for

termination, as Mr. Doran had no performance problems, he was able to perform the job and did

so right up to the moment he was terminated, and there were no problems with his professional

credentials – he held a valid license to practice pharmacy in Oregon.

      20.     Upon information and belief, Wal-Mart terminated Mr. Doran's employment due

to a new policy that classified as ineligible for employment with Wal-Mart all pharmacists who

had in the past received any Board of Pharmacy licensure action related to the

disability/impairment of addiction, history of addiction, or record of addiction/rehabilitation. [1]
Upon information and belief, this policy was not limited to current license suspension, current
use of illegal drugs, being under the influence on the job at Wal-Mart, failed drug tests during
employment with Wal-Mart, addiction-related misconduct during employment with Wal-Mart,
or any other exception permitted by 42 U.S.C. § 12114(a), 42 U.S.C. § 12114(c), 42 U.S.C.
§ 12210(a) or 42 U.S.C. § 12210(c), O.R.S. 659a.124(1), O.R.S. 659a.124(3), or O.R.S.
659a.127.

21.    Upon information and belief, the new policy does not outline "essential functions"
of the position Mr. Doran held with Wal-Mart, as that phrase is defined in federal and state law.
In any event, Wal-Mart did not discuss the new standards with Mr. Doran or otherwise evaluate
whether an adjustment to the new policy or other potential reasonable accommodation was
possible, without undue hardship to the company.

22.    To date, Wal-Mart has refused to produce a copy of the policy, and has refused to
produce a complete copy of Mr. Doran's personnel file, which should include a copy of the
policy under which his employment was terminated, pursuant to O.R.S. 652.750.

23.    Successfully completing the PRN treatment plan and remaining clean and sober
during and after the plan, was a personal triumph for Mr. Doran. Termination of Mr. Doran's
employment because of his medical condition and history of treatment was devastating, and
resulted in depression and suicidal thoughts, and physical symptoms such as increased blood

---

[1] As used in this Complaint, the term "impairment" is defined as a substantial limitation to one or
more major life activities related to addiction and/or participation in a supervised rehabilitation
program, a record of such impairment, or being regarded as having such an impairment. 42
U.S.C. § 12102, § 12114(b), § 12210(b); O.R.S. 659a.104, 659a.124(2).

Page 6 – **COMPLAINT**

pressure that in turn became an obstacle to other employment.  In addition to the emotional

distress Mr. Doran suffered, Mr. Doran has been unable to obtain full time work in his

profession, and has suffered and will continue to suffer significant lost wages.

24.    Mr. Doran timely filed a complaint with the Oregon Bureau of Labor and

Industries on or about July 19, 2012 (BOLI Case Number DPEMDP120725-91203), which was

transferred to the Equal Employment Opportunity Commission (EEOC Case Number 551-2012-

01384).

25.    Mr. Doran received a Right to Sue Notice dated May 30, 2013, and filed this

Complaint within ninety days.

## FIRST CLAIM FOR RELIEF
### (Disability Discrimination - 42 U.S.C. § 12112(b)(1))

26.    Mr. Doran re-alleges as though fully set forth below the allegations in paragraphs

1 through 25.

27.    At all relevant times, Mr. Doran was a qualified person with a

disability/impairment as that term is defined by the Americans with Disabilities Act

Amendments Act ("ADAAA"), in that he had a diagnosed medical condition that substantially

limited one or more major life activities, and he was able to perform and did perform the

essential functions of the job satisfactorily.

28.    At all relevant times, Wal-Mart was aware of Mr. Doran's disability/impairment,

and accommodated the PRN treatment plan through the date of Mr. Doran's successful

completion of that treatment plan.

29.     Wal-Mart singled out Mr. Doran and treated him differently than other employees with comparable skills and performance history, due to his disability/impairment, in violation of the ADAAA.

30.     As outlined herein, Mr. Doran suffered emotional distress and lost wages due to the unlawful termination of employment.

31.     In terminating Mr. Doran due to his history of addiction and successful treatment, Wal-Mart intentionally engaged in a discriminatory practice or practices with malice or with reckless indifference to Mr. Doran's federally protected rights.  As a result of such intentional conduct, Mr. Doran is entitled to punitive damages against Wal-Mart, in an amount sufficient to punish Wal-Mart and deter others from like conduct, pursuant to 42 U.S.C. § 1981a.

32.     Mr. Doran is entitled to his reasonable costs in bringing this claim, including attorney fees, pursuant to 42 U.S.C. § 12205.

**SECOND CLAIM FOR RELIEF**
**(Disability Discrimination - 42 U.S.C. § 12112 (b)(3)(A))**

33.     Mr. Doran re-alleges as though fully set forth below the allegations in paragraphs 1 through 25.

34.     At all relevant times, Mr. Doran was a qualified person with a disability/impairment as that term is defined by the ADAAA, in that he had a diagnosed medical condition that substantially limited one or more major life activities, and he was able to perform and did perform the essential functions of the job satisfactorily.

35.     By terminating individuals, including Mr. Doran, due to past Board of Pharmacy disciplinary action related to addiction and participation in a supervised rehabilitation program, Wal-Mart violated the ADAAA by utilizing standards, criteria, or methods of administration

Page 8 – **COMPLAINT**

that, while facially neutral, had an adverse effect on individuals disabled by reason of addiction and/or by reason of participation in a supervised rehabilitation program.

36.    As outlined herein, Mr. Doran suffered emotional distress and lost wages due to the unlawful termination of employment.

37.    In terminating individuals, including Mr. Doran, due to a history of addiction and successful participation in a supervised rehabilitation program, Wal-Mart intentionally engaged in a discriminatory practice or practices with malice or with reckless indifference to Mr. Doran's federally protected rights.  As a result of such intentional conduct, Mr. Doran is entitled to punitive damages against Wal-Mart, in an amount sufficient to punish Wal-Mart and deter others from like conduct, pursuant to 42 U.S.C. § 1981a.

38.    Mr. Doran is entitled to his reasonable costs in bringing this claim, including attorney fees, pursuant to 42 U.S.C. § 12205.

### THIRD CLAIM FOR RELIEF
**(Disability Discrimination - Discriminatory Employment Standards or Criteria
42 U.S.C. § 12112(b)(6))**

39.    Mr. Doran re-alleges as though fully set forth below the allegations in paragraphs 1 through 25.

40.    At all relevant times, Mr. Doran was a qualified person with a disability/impairment as that term is defined by the ADAAA, in that he had a diagnosed medical condition that substantially limited one or more major life activities, and he was able to perform and did perform the essential functions of the job satisfactorily.

41.    In implementing the new policy outlined herein, and terminating Mr. Doran's employment pursuant to such policy, Wal-Mart violated the ADAAA by implementing a qualification standard or criteria that screened out or tended to screen out qualified individuals

Page 9 – **COMPLAINT**

with a disability/impairment, and the qualification standard or criteria was neither job-related for the position nor consistent with business necessity.

42.    As outlined herein, Mr. Doran suffered emotional distress and lost wages due to the unlawful termination of employment.

43.    In terminating Mr. Doran due to his history of addiction and participation in a supervised rehabilitation program, Wal-Mart intentionally engaged in a discriminatory practice or practices with malice or with reckless indifference to Mr. Doran's federally protected rights. As a result of such intentional conduct, Mr. Doran is entitled to punitive damages against Wal-Mart, in an amount sufficient to punish Wal-Mart and deter others from like conduct, pursuant to 42 U.S.C. § 1981a.

44.    Mr. Doran is entitled to his reasonable costs in bringing this claim, including attorney fees, pursuant to 42 U.S.C. § 12205.

**FOURTH CLAIM FOR RELIEF**
**(Disability Discrimination - Failure to Provide Reasonable Accommodation**
**42 U.S.C. § 12112(b)(5))**

45.    Mr. Doran re-alleges as though fully set forth below the allegations in paragraphs 1 through 25.

46.    At all relevant times, Mr. Doran was a qualified person with a disability/impairment as that term is defined by the ADAAA, in that he had a diagnosed medical condition that substantially limited one or more major life activities, and he was able to perform and did perform the essential functions of the job satisfactorily.

47.    Wal-Mart was aware of Mr. Doran's disability/impairment, and initially accommodated his disability/impairment by complying with the terms of his PRN treatment

Page 10 –    **COMPLAINT**

plan.  In terminating Mr. Doran pursuant to the new policy described herein, Wal-Mart failed to provide reasonable accommodation for Mr. Doran's disability/impairment, in violation of the ADAAA.

48.     At the time of termination, Wal-Mart did not engage in an interactive process with Mr. Doran or otherwise evaluate whether Wal-Mart could continue to reasonably accommodate Mr. Doran's disability/impairment without undue hardship to the company, by making allowances for or adjustments to the new policy described herein.

49.     Nothing in this Claim for Relief is intended to or does waive Mr. Doran's right to assert that the standards and criteria required by the new policy described herein do not qualify as "essential functions" of the position Mr. Doran held with Wal-Mart, as that phrase is defined by applicable law.

50.     As outlined herein, Mr. Doran suffered emotional distress and lost wages due to the unlawful termination of employment.

51.     In failing to engage in the interactive process and failing to reasonably accommodate Mr. Doran's disability, Wal-Mart intentionally engaged in a discriminatory practice or practices with malice or with reckless indifference to Mr. Doran's federally protected rights.  As a result of such intentional conduct, Mr. Doran is entitled to punitive damages against Wal-Mart, in an amount sufficient to punish Wal-Mart and deter others from like conduct, pursuant to 42 U.S.C. § 1981a.

52.     Mr. Doran is entitled to his reasonable costs in bringing this claim, including attorney fees, pursuant to 42 U.S.C. § 12205.

Page 11 –     **COMPLAINT**

**FIFTH CLAIM FOR RELIEF**
**(Disability Discrimination - Record Of Disability 42 U.S.C. § 12102(1)(B))**

53.     Mr. Doran re-alleges as though fully set forth below the allegations in paragraphs 1 through 25.

54.     In addition to or in the alternative to the claims outlined above, Wal-Mart terminated Mr. Doran because of his record of disability/impairment, that is, because of his documented history of addiction and participation in a supervised rehabilitation program, in violation of the ADAAA.

55.     As outlined herein, Mr. Doran suffered emotional distress and lost wages due to the unlawful termination of employment.

56.     In terminating Mr. Doran due to his documented history of addiction and participation in a supervised rehabilitation program, Wal-Mart intentionally engaged in a discriminatory practice or practices with malice or with reckless indifference to Mr. Doran's federally protected rights.  As a result of such intentional conduct, Mr. Doran is entitled to punitive damages against Wal-Mart, in an amount sufficient to punish Wal-Mart and deter others from like conduct, pursuant to 42 U.S.C. § 1981a.

57.     Mr. Doran is entitled to his reasonable costs in bringing this claim, including attorney fees, pursuant to 42 U.S.C. § 12205.

**SIXTH CLAIM FOR RELIEF**
**(Disability Discrimination - Regarded As Disabled 42 U.S.C. § 12102(1)(C))**

58.     Mr. Doran re-alleges as though fully set forth below the allegations in paragraphs 1 through 25.

59.     In addition to or in the alternative to the claims outlined above, Wal-Mart regarded Mr. Doran as substantially limited in his ability to perform any work in his field, due to his history of addiction and participation in a supervised rehabilitation program.

60.     By terminating Mr. Doran, because he was regarded as disabled, Wal-Mart violated the ADAAA.

61.     As outlined herein, Mr. Doran suffered emotional distress and lost wages due to the unlawful termination of employment.

62.     In terminating Mr. Doran because he was regarded as disabled, Wal-Mart intentionally engaged in a discriminatory practice or practices with malice or with reckless indifference to Mr. Doran's federally protected rights.  As a result of such intentional conduct, Mr. Doran is entitled to punitive damages against Wal-Mart, in an amount sufficient to punish Wal-Mart and deter others from like conduct, pursuant to 42 U.S.C. § 1981a.

63.     Mr. Doran re-alleges as though fully set forth below the allegations in paragraphs 1 through 25.

64.     Mr. Doran is entitled to his reasonable costs in bringing this claim, including attorney fees, pursuant to 42 U.S.C. § 12205.

**SEVENTH CLAIM FOR RELIEF**
**(Disability Discrimination – O.R.S. 659a.103 - 139)**

65.     At all relevant times, Mr. Doran was a qualified person with a disability/impairment as that term is defined by O.R.S. 659a.104, in that he had a diagnosed medical condition that substantially limited one or more major life activities, and he was able to perform and did perform the essential functions of the job satisfactorily, and/or he had a record

Page 13 –     **COMPLAINT**

of disability/impairment, and/or he was regarded as disabled by Wal-Mart due to his history of addiction and participation in a supervised rehabilitation program.

66.     Wal-Mart violated Oregon Revised Statutes 659a.112(1), (2)(a), (2)(c), and/or (2)(g) by terminating Mr. Doran's employment because he is disabled, and/or has a record of disability/impairment, and/or because Wal-Mart regarded Mr. Doran as disabled, and/or by utilizing standards that had the effect of discrimination on the basis of disability/impairment, and/or by using qualification standards or other selection criteria that screen out or tend to screen out an individual with a disability/impairment or a class of individuals with disabilities/impairments, and the standards or criteria were not job-related for the position in question and consistent with business necessity.

67.     As outlined herein, Mr. Doran suffered emotional distress and lost wages due to Wal-Mart's unlawful termination of his employment.

68.     In terminating Mr. Doran because Mr. Doran is disabled, because Mr. Doran has a record of disability/impairment, and/or because Wal-Mart regarded Mr. Doran as disabled, Wal-Mart acted with malice or showed a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the welfare of its employees.  As a result of such intentional conduct, Mr. Doran is entitled to punitive damages against Wal-Mart, in an amount sufficient to punish Wal-Mart and deter others from like conduct, pursuant to O.R.S. 659a.885(3)(a).

69.     Mr. Doran's remedies under federal law are inadequate, inasmuch as the cap on compensatory and punitive damages provided under federal law is insufficient to punish Wal-Mart and deter Wal-Mart and others from similar conduct.

Page 14 –     **COMPLAINT**

70.    Mr. Doran is entitled to his reasonable costs in bringing this claim, including attorney fees, pursuant to O.R.S. 659a.885(1).

## EIGHTH CLAIM FOR RELIEF
**(Disability Discrimination – Failure to Provide Reasonable Accommodation
O.R.S. 659a.112(2)(e))**

71.    Mr. Doran re-alleges as though fully set forth below the allegations in paragraphs 1 through 25.

72.    At all relevant times, Mr. Doran was a qualified person with a disability/impairment as that term is defined by Oregon statutes, in that he had a diagnosed medical condition that substantially limited one or more major life activities, and he was able to perform and did perform the essential functions of the job satisfactorily.

73.    Wal-Mart was aware of Mr. Doran's disability/impairment, and initially accommodated his disability/impairment by complying with the terms of his PRN treatment plan.  In terminating Mr. Doran pursuant to the new policy, Wal-Mart failed to provide reasonable accommodation for Mr. Doran's disability/impairment, in violation of O.R.S. 659a.112(2)(e).

74.    At the time of termination, Wal-Mart did not engage in an interactive process with Mr. Doran or otherwise evaluate whether Wal-Mart could continue to reasonably accommodate Mr. Doran's disability/impairment without undue hardship to the company, by making adjustments or modifications to the new policy described herein.

75.    Nothing in this Claim for Relief is intended to or does waive Mr. Doran's right to assert that the standards and criteria required by the new policy described herein do not qualify as "essential functions" of the position Mr. Doran held with Wal-Mart, as that phrase is defined by applicable law.

Page 15 –    **COMPLAINT**

76.    In terminating Mr. Doran without engaging in the interactive process or providing reasonable accommodation, Wal-Mart acted with malice or showed a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the welfare of its employees.  As a result of such intentional conduct, Mr. Doran is entitled to punitive damages against Wal-Mart, in an amount sufficient to punish Wal-Mart and deter others from like conduct, pursuant to O.R.S. 659a.885(3)(a).

77.    Mr. Doran's remedies under federal law are inadequate, inasmuch as the cap on compensatory and punitive damages provided under federal law is insufficient to punish Wal-Mart and deter Wal-Mart and others from similar conduct.

78.    Mr. Doran is entitled to his reasonable costs in bringing this claim, including attorney fees, pursuant to O.R.S. 659a.885(1).

WHEREFORE Plaintiff David Shane Doran prays for relief as follows:

1.    For lost wages, in an amount to be determined at trial but not less than $265,000;

2.    For future lost wages, in an amount to be determined at trial but not less than $350,000;

3.    For emotional distress damages, in an amount to be determined at trial but not less than $500,000;

4.    For punitive damages, in an amount sufficient to punish defendant and deter others from similar conduct, but not less than $50,000,000; and

5.      For plaintiff's reasonable costs incurred in bringing these claims, including

attorney fees, pursuant to 42 U.S.C. § 12205 and O.R.S. 659a.885.

DATED this 15th day of August, 2013.


HARRANG LONG GARY RUDNICK P.C.


By:     /s/ Shari L. Lane
        Shari L. Lane, OSB #022440
        shari.lane@harrang.com
        Joshua P. Stump, OSB #974075
        joshua.stump@harrang.com
        Telephone:    503.242.0000
        Facsimile:    503.241.1458
        Of Attorneys for Plaintiff DAVID SHANE
        DORAN


P0327066.1

Page 17 –      **COMPLAINT**